■ PAUL A. CHETCUTI, Appellant, v. CHARLES W. HART, SR., Doing Business as ROUNDS' FUEL SERVICE, Appellant, and MOBIL OIL COMPANY et al., Respondents. (Action No. 1.) WILLARD PULLMAN et al., Appellants, v CHARLES W. HART, SR., Doing Business as ROUNDS' FUEL SERVICE, Appellant, and

MOBIL OIL COMPANY et al., Respondents. (Action No. 2.) — STALEY, JR., J. Appeals by plaintiffs-appellants in actions No. 1 and No. 2 from (1) orders entered November 23, 1966 which granted the motions of defendants-respondents for summary judgment and from (2) judgments entered thereon which dismissed the complaints of plaintiffs-appellants as against defendants-respondents. Cross appeals by defendant-appellant in actions No. 1 and No. 2 from (1) orders entered November 23, 1966 which granted the motions of defendants-respondents for summary judgment and from (2) judgments entered thereon which dismissed the cross claims of defendant-appellant against defendants-respondents. On March 21, 1962 an explosion occurred on real property owned by plaintiff, Paul A. Chetcuti, located in the Hamlet of Coventry, Chenango County, New York, which contained a combination general store, living quarters and gasoline filling station. The property was leased to plaintiffs Willard Pullman and Pauline Pullman who had purchased the general store business and gasoline station from Chetcuti on October 10, 1960, and had operated the business from that date until the date of the explosion. The explosion and the fire that followed resulted in extensive damage to the building owned by Chetcuti, and the personal property on the premises owned by the Pullmans. In 1933 respondents installed three gasoline tanks and pumps on the property which, from the time of their installation to the time of the explosion, were used for the sale of high test gasoline, regular gasoline and kerosene. Each tank was connected with two pipes extending above ground; one pipe was used as a gauge pipe to measure the amount of fuel in the tank; and the other was used as a fill and vent pipe. The respondents sold the tanks and pumps in 1959 to defendant-appellant's predecessor who in 1960 sold them to defendant-appellant Hart, who at that time entered into an agreement with respondents whereby Hart became a wholesale distributor of respondents' products. The complaints allege that respondents were negligent in the installation of the " storage tanks with a defective vent system " and that such installation was " in direct contravention of known and accepted procedures relating to the venting of underground gasoline storage tanks ". The specific defects claimed in the venting system are that the vent pipes extending 9 to 13 inches above the ground permitted dangerous fumes to collect at ground level where they were subject to ignition; that the vent pipes were constructed too close to the building; that the vent and fill pipes were connected at a point underground before they entered the storage tank; and that neither the vent nor fill pipe extended down any substantial distance into the tank. Special Term held that respondents were entitled to summary judgment, since the plaintiffs did not present evidentiary facts tending to show that there was some latent defect or hidden danger not discoverable by reasonable inspection existing in the equipment at the time it was sold by respondents, and further that if there was anything defective about the location or installation of the pipes, it was not a latent or concealed defect. Plaintiffs claim that although the height of the vent pipes above ground and their distance from the building were clearly visible, a question of fact exists as to whether or not such conditions constituted an obvious or a hidden danger which could cause an explosion. In addition, plaintiffs claim that there is also a question of fact as to whether or not there was a hidden or latent defect in the piping below the surface of the ground since the combination fill and vent pipe did not go directly into the underground gasoline tank, but was connected by an elbow and parallel pipe to the gauge pipe which led directly into the underground tank. Plaintiffs contend that they are prepared to offer expert testimony by qualified engineers to the effect that the facts support their claim that the venting system was defective, and that the underground installation created a dan-

gerous or latent defect which caused the explosion. The plaintiffs admit that on the occasions when the storage tanks were filled they were aware of the odor of gas fumes but were not aware of any danger attendant therewith. However, whether or not any danger existed by reason of the pipes above ground which were patent or by reason of the underground installation which was latent presents a question of fact for trial and thus precludes the granting of summary judgment. Since there are triable issues of fact presented, the motion for summary judgment should not have been granted. The cases of *Campo* v. *Scofield* (301 N. Y. 468) and *Inman* v. *Binghamton Housing Auth.* (3 N Y 2d 137) relied upon by the defendants-respondents are not applicable here. Those cases held that injuries caused by a patent defect in a machine, or in the construction of a building, are not actionable, particularly when there is no allegation of the existence of a latent defect or a danger unknown to the plaintiff. Here plaintiffs contend that a latent defect did exist unknown to them by reason of the installation of the gasoline storage tanks and piping connected thereto underground which resulted in a defective venting system which may have been the proximate or contributing cause of the explosion. The dismissal of the cross claims of the defendant-appellant should also be reversed, and the cross claims reinstated. Judgments and orders reversed, on the law and the facts, and motions for summary judgment denied, with costs to plaintiffs-appellants. Gibson, P. J., Reynolds, Staley, Jr., and Greenblott, JJ., concur in memorandum by Staley, Jr., J.; Aulisi, J., not voting.