**R.N. THOMPSON & ASSOCIATES, INC., Appellant (Third Party Plaintiff),**

v.

**WICKES LUMBER COMPANY, Appellee (Third Party Defendant).**

**WICKES LUMBER COMPANY, Cross–Appellant (Third Party Plaintiff),**

v.

**HOOVER TREATED WOOD PRODUCTS, INC., Hoover Universal, Inc., and Carter–Lee Lumber Company, Inc., Cross–Appellees (Third–Party Defendants).**

No. 49A02–9608–CV–515.

Court of Appeals of Indiana.

Dec. 3, 1997.

Transfer Denied March 25, 1998.

James N. Scahill, Schnorr, Good, Scahill & Maier, Indianapolis, for R.N. Thompson & Associated, Inc.

John M. Choplin, Nelson A. Nettles, Norris, Choplin & Schroeder, Indianapolis, for Wickes Lumber Company (Appellee/Cross–Appellant).

David M. Haskett, Sandra Boyd Williams, Locke Reynolds Boyd & Weisell, Indianapolis, for Hoover Treated Wood Products, Inc. and Carter–Lee Lumber Company, Inc. (Cross–Appellee).

Christopher G. Scalon, David A. Given, Baker & Daniels, Indianapolis, for Hoover Universal, Inc. (Cross–Appellee).

## OPINION

SULLIVAN, Judge.

Appellant, R.N. Thompson & Associates, Inc. (Thompson), appeals the trial court's April 6, 1996 order granting summary judgment in favor of Appellee/Cross–Appellant, Wickes Lumber Company (Wickes). Further, Wickes, as a cross-appellant, appeals the trial court's grant of summary judgment in favor of Cross–Appellees, Hoover Treated Wood Products, Inc. (Hoover), Hoover Universal, Inc. (Hoover Universal) and Carter–Lee Lumber Company, Inc. (Carter–Lee). Because we affirm the trial court's grant of summary judgment in favor of Wickes as against Thompson, we need not address Wickes' contentions with regard to the trial court's order granting summary judgment

against Wickes in favor of the Cross–Appellees.

The sole issue to be addressed is whether the trial court erred in granting summary judgment for Wickes against Thompson who sought indemnification from Wickes under a warranty different from that which was the basis for the action against Thompson.

While the procedural posture of this case is complex, the facts are not.[1] Between 1985 and 1987, Thompson constructed forty-five units in a planned residential development for Sandpiper Bay Homeowners Association (Sandpiper). In 1993, Sandpiper filed a cause of action against Thompson claiming negligence, and breach of implied warranties of merchantability, habitability and fitness for particular purposes. Thompson moved to dismiss Sandpiper's claim of negligence because Sandpiper alleged purely an economic loss. Further, Thompson moved to dismiss Sandpiper's implied warranty of merchantability and fitness for a particular purpose claims because the Uniform Commercial Code as enacted in Indiana only applies to the sale of goods. The motions were granted, and Sandpiper's claim for breach of the implied warranty of habitability remained.

Sandpiper alleged several problems with the houses, including problems with the fire-retardant-treated plywood used in the construction. Accordingly, Thompson filed a third party complaint against Wickes.[2] The complaint is vague as to what legal theory Thompson was asserting against Wickes; however, the essence of the complaint is that if the plywood were found to be defective and Thompson held accountable to Sandpiper, then Wickes should accordingly be held accountable to Thompson. Essentially, Thompson sought indemnification from Wickes.

Wickes, in turn filed a third party complaint against Hoover. Wickes also filed third party complaints against Carter–Lee and Hoover Universal. However, because as above mentioned, we hold today that Thompson may not seek indemnification from Wickes, the question of whether Wickes may seek indemnification from the various Cross–Appellees is rendered moot.

As we have noted, a right to indemnification usually arises from an express or implied contract or statutory obligation. *Rotec v. Murray Equipment* (1993) Ind.App., 626 N.E.2d 533, 535, *reh'g denied.* Here, Thompson alleges neither an actual express contractual indemnification provision nor a statutory obligation; therefore, "the action will lie only where the party seeking indemnity is without actual fault but has been compelled to pay damages because of the wrongful conduct of another for which he is constructively liable." *Coca–Cola Bottling Co.—Goshen, Indiana v. Vendo Company* (1983) Ind.App., 455 N.E.2d 370, 373. An indemnity claim may exist "in breach of warranty situations where the retailer is sued upon implied warranties which are identical to those imposed upon the manufacturer's sale to him." *Id.* (citing *Frank R. Jelleff, Inc. v. Pollak Bros., Inc.* (1957) N.D.Ind., 171 F.Supp. 467.)

In *Jelleff,* quoting from a Minnesota decision, the federal district court discussed an indemnity claim based upon a breach of warranty and stated:

> "To establish his right to recover against the original seller under such a judgment the purchaser, in a subsequent action over against the seller, must prove that the article involved was purchased by him from such seller and that the warranties under which it was sold to him were identical to those under which he subsequently resold it." *Jelleff, supra,* 171 F.Supp. at 471 (quotation omitted).

Where the first party sells an item to a second party under a particular implied warranty and that second party passes the product on to a third party under the same warranty, the first party may be made to indemnify the second party for any claim brought against it for a breach of that warranty. Both parties here agree that the

---

1. In fact, Wickes accepts Thompson's recitation of the facts as they concern Thompson's appeal against Wickes.

2. Thompson actually filed numerous third party complaints; however, the complaint against Wickes is the only one at issue before us.

warranties must be identical; however, the disagreement lies with what constitutes the "identity" of the warranties.

The aforementioned principle is sound. If Wickes had sold the plywood in question under a three-year warranty to be free from defects, impliedly or otherwise, that warranty would continue for the three year period although Thompson resold the lumber to Sandpiper, so long as Thompson had resold the plywood with the same warranty. Thompson should not be able to obtain indemnity with respect to a different obligation than that which Wickes gave to Thompson. It is not Thompson's prerogative to extend or change what Wickes has undertaken (or the legislature has obligated Wickes to undertake).

As noted above, Sandpiper's claim against Thompson is upon a theory of breach of implied warranty of habitability. Thompson, however, could have no such claim against Wickes for the purchase of lumber. Thompson must claim that Wickes breached an implied warranty of merchantability. Thompson asserts that identicalness of warranties means that the "underlying basis of the breach of warranties" must be identical. Wickes, on the other hand, contends that a warranty of merchantability and a warranty of habitability are different creatures because they are titled differently.

There is a degree of merit to Thompson's position. However, we reach a different conclusion. If, in fact, the warranties must be identical in title, the effect in many cases might be unduly harsh. Any builder could readily recognize that any warranties he received from suppliers of various building materials would be extinguished upon the sale of the home because his warranty to the purchaser, i.e. that of habitability, is different in title than the warranty of merchantability. Furthermore, it is obvious that the concept of habitability is totally incongruous as to any single component out of the many which comprise the completed structure. Therefore, the identicalness test of warranties does not rest upon the titles given to the particular warranties.

Thompson's conclusion would also prove similarly harsh to the supplier of goods to a contractor. In enacting I.C. 26–1–2–314, our legislature has determined that, when a sale of goods is made, a warranty of merchantability passes with those goods. Additionally, our legislature has determined that this particular warranty may extend for no more than four years from the tender of delivery. I.C. 26–1–2–725 (Burns Code Ed. Repl.1992). On the other hand, the implied warranty of habitability extends for six years from the discovery of a defect in the home. I.C. 34–1–2–1 (Burns Code Ed. Repl.1986).[3] It would be unfair to allow a builder, by incorporating a supplier's goods into its building, to extend the implied warranty of merchantability by two years. Therefore, the identity of warranties analysis simply begs the question of what is warranted.

▮▮▮ A warranty of habitability warrants that the home will be free from defects which substantially impair the use and enjoyment of the house. *See Kissel v. Rosenbaum* (1991) Ind.App., 579 N.E.2d 1322. As this court has previously noted, " 'breach of the warranty [of habitability] is established by proof of a defect of a nature which substantially impairs the enjoyment of the residence.' " *Rogers v. Lewton* (1991) Ind.App., 570 N.E.2d 133, 135 (quoting *Wagner Construction Co., Inc. v. Noonan* (1980) Ind.App., 403 N.E.2d 1144, 1148–49). To the extent that the implied warranty of habitability covers defects in the structure and those same defects are covered by the supplier under an implied warranty of merchantability, the warranties are identical. When the supplier, under the implied warranty of merchantability, warrants plywood to the builder, he warrants that the plywood will be free from defects which will cause a loss of enjoyment. When the builder of the house passes on an implied warranty of habitability, he passes on an identical guarantee to the purchaser—that the plywood will be free from defects which will substantially impair the enjoyment of the house. When the purchaser claims that the builder has breached his

---

**3.** The parties do not raise, nor do we address, whether the limitations period in I.C. 26–1–2–725 runs afoul of *Martin v. Richey* (1997) Ind.App., 674 N.E.2d 1015, *reh'g denied.*

warranty based upon a defect which is precisely what the supplier warranted against, the builder may seek indemnity.

 However, such conclusion provides no relief for Thompson. Such indemnification would only lie for the time period specified under the statute of limitation. As mentioned earlier, Thompson may not extend Wickes' warranty beyond the four years that our legislature has deemed appropriate. While the statute of limitation is not a part of the warranty and does not itself cause the warranties to cease being identical, Thompson must bring its indemnity action within the time period for the warranty upon which it bases its claim, i.e. four years. Sandpiper brought suit in 1993 and Thompson finished building the home in 1987. More than four years had passed since the tender of delivery of the goods by Wickes to Thompson; therefore, Thompson's cause of action is barred.[4]

In conclusion, the trial court did not err in granting Wickes' motion for summary judgment. Although Thompson need not base its claim for indemnity upon a warranty of identical title to that under which Sandpiper brought suit, Thompson's indemnity suit must be brought within the time frame allowed for the warranty upon which its claim is based. That time limitation is four years. More than four years had passed since Wickes sold the plywood in question to Thompson, and while the warranties may be sufficiently identical as to their interrelationship, Thompson has no remedy.

The decision of the trial court granting summary judgment is hereby affirmed.

FRIEDLANDER and BAKER, JJ., concur.

---

**4.** Wickes raised the statute of limitations as an affirmative defense in its answer.