**CARROLL'S MOBILE HOMES, INC., Appellant,**

v.

**Karla J. HEDEGARD, Appellee.**

No. 22A05–0008–CV–324.

Court of Appeals of Indiana.

March 23, 2001.

Derrick H. Wilson, Mattox Mattox & Wilson, New Albany, IN, Attorney for Appellant.

Stephen W. Voelker, Jeffersonville, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge

Carroll's Mobile Homes, Inc. (Carroll's) appeals from a judgment entered in favor of Karla J. Hedegard. The following restated issue is presented in this appeal:

Did the trial court err in finding that Carroll's breached the implied warranty of habitability and in granting judgment on that basis in favor of Hedegard?

We reverse.

The facts most favorable to the judgment are as follows. Hedegard filed an action entitled *"CLAIM FOR CON-STRUCTIVE FRAUD"* against Carroll's on July 13, 1999. Hedegard alleged:

1. In 1987, Hedegard purchased a mobile home from defendant, Carroll's Mobile Homes, Inc. (Carroll's).

2. Hedegard does not have a copy of the purchase agreement.

3. Carroll's gave an implied warranty of habitability.

4. Carroll's failed to set up the mobile home according to the manufacturer's directions.

5. The foundation under the piers which form the foundation of the home have failed.

6. As a direct result of the footers for the piers failing, the home has twisted and is structurally failing.

7. Carroll's failure to place the foundation under the piers under the home was an artifice or device done with the intention to defraud Hedegard.

8. Carroll's either acted intentionally or with a needlessly reckless disregard of the consequences.

9. Carroll's constructively defrauded Hedegard. Carroll's knew the proper manner to install [a] foundation under the home, but made a conscious decision not to do so.

10. As a direct result of the structural failure the home has be [sic] devalued.

11. Carroll's has a custom and practice of not instructing its set up crews of the manufacturer's set up requirements.

12. Plaintiff, Karla J. Hedegard, demands a judgment against defendant, Carroll's Mobile Homes, Inc., for enough money to fully compensate her for her losses, enough punitive damages to punish Carroll's Mobiles Homes, Inc., interest and costs.

*Record* at 10–11.

Carroll's was at all relevant times a retail seller of mobile homes and not a manufacturer. Hedegard purchased the mobile home from Carroll's on November 7, 1987 and signed a retail buyer's order that stated in pertinent part: " 'NEW MERCHANDISE IS ONLY SOLD WITH WARRANTY AS MAY BE GIVEN BY MANUFACTURER. SELLER MAKES NO WARRANTY OF MERCHANTIBIL-ITY OR OTHERWISE, EXPRESS OR IMPLIED.' " *Record* at 71.

During cross-examination, counsel for Carroll's directed Hedegard to the language found in the retail buyer's order that the only warranty that existed was that given by the manufacturer and questioned Hedegard about any alleged warranty made by Carroll's. Hedegard's attorney objected to such questioning and stated during discussion among counsel and the court, "We'll stipulate and agree that the statute of limitations for warranty for [sic], has all been gone. The question is for the fraud that occurred here in the construction of the piers and their knowledge of it." *Record* at 206. Defense counsel acknowledged the stipulation and continued his cross-examination without asking Hedegard any further questions about warranty.

Near the close of evidence at trial, the following colloquy occurred between the trial court and Hedegard's attorney:

THE COURT: Mr. Voelker, I want.you, the theory of your case, I want you to tell me what that is?

MR. VOELKER: Okay, the theory is fraud, Your Honor. Plain old garden variety, artificial deception. If I could respond to the last.

THE COURT: Just a minute. Mr. Wallingford [Carroll's attorney], in his motion for judgment on the evidence, talked in the nature of constructive fraud.

MR. VOELKER: That's correct. I've labeled the Complaint constructive fraud, Your Honor.

THE COURT: Okay.

MR. VOELKER: And, in light of everything that's occurred it's probably, well, a misrepresentation, their sales person that does order the duty [sic], I don't think it comes to the point of fiduciary duty.

\* \* \*

THE COURT: Paragraph three of your complaint you say, "Carroll's gave an implied warranty of habitability."

MR. VOELKER: We can agree to—

THE COURT: Pardon?

MR. VOELKER: We can agree that that is not applicable. They did, but with the passage of time.

THE COURT: What about discovery of that, of a breach of that habitability. What's the statute of limitations on that?

MR. VOELKER: There is no clear law on that area at all, Your Honor, but, to be safe, we'll just leave it where we are. If I can't make the fraud.

THE COURT: I'm sorry. What?

MR. VOELKER: If we can't make the fraud case then we can't probably make the others.

*Record* at 316–19.

At the conclusion of trial, the court stated that it would perform its own independent research, but also instructed each attorney to submit documentation with regard to whether fraud had been established. The trial court thereafter entered judgment in favor of Hedegard in the amount of $12,000. The judgment stated in pertinent part:

3. Defendant owed Plaintiff a warranty of habitability that the mobile home, as installed, would be free from defects which would substantially impair the use and enjoyment of such mobile home.

\* \* \*

7. The earliest that Plaintiff could have discovered or become aware that the piers were defective and were not installed and/or constructed as required by the Owner's Manual was in 1995.

8. Plaintiff filed her complaint on July 13, 1999 which was within the statute of limitations concerning an implied warranty of habitability under Indiana Code 34–11–2–7.

9. The uncontroverted evidence was that the damage to Plaintiff's mobile home was caused by the defective installation and/or construction of the piers.

*Record* at 44–45.

■ A person who builds a house provides an implied warranty of habitability to the homebuyer for a period of six years. *R.N. Thompson & Assoc. Inc. v. Wickes Lumber,* 687 N.E.2d 617 (Ind.Ct.App. 1997), *trans. denied.* The implied warranty of habitability applies only to home builders-vendors. *Choung v. Iemma,* 708 N.E.2d 7 (Ind.Ct.App.1999). It does not apply to a mere vendor. *Id.*

An implied warranty of fitness for habitation warrants that a house will be free from defects which substantially impair the use and enjoyment of that house. A breach of the implied warranty of habitability is established by proof of a defect which substantially impairs the use and enjoyment of the residence.... [A]n implied warranty of habitability in the sale of a new house extended from a "builder-vendor" to an immediate purchaser. A "builder-vendor" is a person in the business of building and selling homes for profit.

*Id.* at 12 (citations omitted).

The trial court erred in finding that Carroll's had breached an implied warran-

ty of habitability and in granting judgment on that basis in favor of Hedegard. Because Carroll's was not a builder-vendor, the implied warranty of habitability does not apply to it. *Id.*[1] Moreover, even if the warranty of habitability applied to Carroll's, Hedegard is judicially estopped from relying upon such theory for recovery because her attorney specifically stipulated both that the warranty of habitability was inapplicable and that the statute of limitations with regard to such warranty had expired. *See Wabash Grain, Inc. v. Smith,* 700 N.E.2d 234, 237 (Ind.Ct.App. 1998) ("judicial estoppel prevents a party from asserting a position in a legal proceeding inconsistent with one previously asserted"), *trans. denied.*

Judgment reversed.

BAILEY, J., and MATTINGLY, J., concur.

---

1. We disagree with *Choung* to the extent that it holds that the implied warranty of habitability does not apply to a foundation, drainage, or septic system. *See id.* at 12 n. 2 ("[b]ecause a foundation and drainage and septic system are not habitable, the implied warranty of habitability cannot be extended to them"). It is well established that the installation of defective sewer lines and the improper placement of drain tile by a builder-vendor may constitute a breach of the implied warranty of habitability. *Theis v. Heuer,* 264 Ind. 1, 280 N.E.2d 300 (1972).